```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Michael Shane Frazier,           :

    Plaintiff,               :

  v.                               :        Case No.  2:14-cv-1062

                                          :        JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,          Magistrate Judge Kemp

    Defendant.               :

## REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, Michael Shane Frazier, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on July 21, 2011, and alleged that Plaintiff became disabled on October 15, 2008.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on April 17, 2013.  In a decision dated July 11, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on June 5, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on November 17, 2014.  Plaintiff filed his statement of specific errors on January 23, 2015, to which the Commissioner responded on April 28, 2015.  Plaintiff filed a reply brief on May 15, 2015, and the case is now ready to decide.

### II.  The Lay Testimony at the Administrative Hearing

Plaintiff, who was 40 years old at the time of the administrative hearing and who did not graduate from high school, testified as follows.  His testimony appears at pages 30-38 of the administrative record.

Plaintiff was first asked about his education. He explained that he was in special education classes and was unable to complete the work for a GED because he could not understand the math and history required.

Next, Plaintiff testified to having a kidney stone problem. He had issues relating to kidney stones three or four times per year. Each episode requires a trip to the hospital. He also experienced drops in blood sugar which affected him for half an hour or 45 minutes. Additionally, he had back problems which included some amount of pain on a daily basis, with some days being particularly bad. That problem affected his ability to lift and to move around. Plaintiff also described symptoms of depression and anger. He had outbursts of anger once every few months.

The ALJ questioned Plaintiff about his work history. Plaintiff said that he had worked since his onset date, and was working at the time of the hearing. He worked through a temporary service at a factory and might stand or lift depending on what was needed. Usually, he worked 24 hours per week in two twelve-hour shifts. Before that he worked as a grill cook at McDonald's.

On a typical day, Plaintiff was able to bathe and dress himself, do dishes and laundry, drive, and shop for groceries. He did not have any social activities and generally stayed at home.

### III.  The Medical Records

The medical records in this case are found beginning on page 291 of the administrative record. The pertinent records - those relating to Plaintiff's single statement of error - can be summarized as follows. Because Plaintiff's physical capacity is not at issue, the Court's summary will not focus on records relating to treatment for physical conditions.

On October 25, 2011, James Spindler, a psychologist, performed a consultative psychological evaluation.  Plaintiff told Mr. Spindler he could not work due to a bad back, kidney stones, and problems getting along with people.  He said that he had dropped out of high school, where he was in an LD program, and that his attendance was poor.  He had been treated for depression in 2001 as an inpatient, but had never received any outpatient counseling.  Most of his jobs involved unskilled labor.  Plaintiff did not appear to be depressed and described his energy level as average.  He was in a relationship which was going well.  He denied panic attacks and did not seem anxious.  He also appeared to be in the borderline range of intelligence.  His full-scale IQ was measured at 70, with a score of 66 in verbal comprehension.  Mr. Spindler diagnosed a depressive disorder, rated Plaintiff's GAF at 65 overall, and said that Plaintiff's knowledge and judgment were adequate.  He also concluded that having a job would likely reduce Plaintiff's stress level by addressing some of his financial concerns.  (Tr. 398-403).

In August of 2012, Plaintiff sought counseling at Six County, Inc., reporting that he did so due to anger management issues.  He appeared depressed and sad.  According to the intake assessment, only short-term treatment was anticipated.  Plaintiff's symptoms were described as mild.  (Tr. 527-36).

The records were reviewed by Dr. Hoyle, a psychologist, for the state agency.  She concluded that Plaintiff suffered from an affective disorder which, under the "B" criteria, imposed mild limitations on activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  In her residual functional capacity evaluation, she said that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended

periods, but she explained that limitation this way: "CE examiner states BIF in the body of the report but did not include it in Dx section.  Scores and hx of LD programming would support a limitation in u/f/r [understanding, following, and remembering] complex directions.  Clmt is capable of performing 1-4 step tasks."  (Tr. 72).

### IV.   The Vocational Testimony

Olen J. Dodd was the vocational expert in this case.  His testimony begins at page 38 of the administrative record.

Mr. Dodd was asked to categorize Plaintiff's past work.  He identified Plaintiff's current job as a conveyor attendant and said that was a light, unskilled occupation.  The McDonald's job was also light and unskilled.  Other past jobs were either light or medium, and all unskilled as well except for sawmill worker, which was semiskilled, and tire changer, which was both semiskilled and heavy.

Mr. Dodd was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at all exertional levels.  The person could, however, do only simple tasks and could interact only occasionally with the general public.  Also, the person could respond appropriately to simple changes in the work routine and make simple work-related decisions.  In response, Mr. Dodd said that such a person could do some of Plaintiff's past jobs such as janitor and conveyor attendant, and could also do medium jobs like warehouse worker, lumber sorter, and landscape worker.  Light cleaner would also be consistent with those limitations, as would laundry folder, air purifier services, stuffer, pager (also a cleaning job), and polisher.

In response to questions from Plaintiff's counsel, Mr. Dodd testified that no more than three days of unexcused absences from work each month would be tolerated, and that aggressiveness

toward supervisors was handled differently by different employers.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11-21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. Next, she found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 15, 2008. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had only a single severe impairment - borderline intellectual functioning. The ALJ also found that this impairment did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels. In terms of nonexertional limitations, the ALJ found that Plaintiff could understand, remember, and carry out simple one- to four-step tasks, could respond appropriately to coworkers and supervisors, could have only occasional interaction with the general public, could respond appropriately to simple changes in the work routine, and could make simple work-related decisions.

The ALJ next concluded that, given this residual functional capacity, Plaintiff could not do his past relevant work, but he could do the various medium, light, and sedentary jobs identified by the vocational expert. The ALJ further found that such jobs existed in significant numbers in the national economy. Consequently, the ALJ concluded that Plaintiff was not entitled

to benefits.

## VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises only one issue. He contends that the ALJ erred by failing to include in both the hypothetical question posed to the vocational expert, and in her residual functional capacity assessment, the limitations which stemmed from the severe impairment which she found to exist. This issue is evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708

-6-

F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's argument can be fairly stated this way.  At step two of the sequential evaluation process, the ALJ found that Plaintiff suffered from borderline intellectual functioning.  At step three, the ALJ, when considering whether that impairment met or equaled a listed impairment, determined that Plaintiff had moderate difficulties with regard to concentration, persistence, and pace, noting that in his Function Report Plaintiff said that he was usually okay with written instructions and did not do too badly with spoken ones.  (Tr. 16).  When deciding Plaintiff's residual functional capacity, however, the ALJ did not appear to take into account any limitations in the areas of concentration, persistence, and pace.  This failure, according to Plaintiff, violates the Court of Appeals' ruling in Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010), a case which held that limiting a claimant to the performance of simple, repetitive tasks did not adequately account for deficiencies in concentration, persistence, and pace.  Plaintiff then cites a number of decisions from this Court which reversed and remanded cases based on Ealy, and argues for the same result here.

The Commissioner relies on a different Court of Appeals decision, Smith-Johnson v. Comm'r of Social Security, 579 Fed. Appx. 426 (6th Cir. Sept. 8, 2014) for the proposition that, under some circumstances, a moderate limitation in the area of concentration, persistence, and pace can be satisfied by restriction of a claimant to the performance of simple tasks. The Commissioner points out that, in this case, Dr. Hoyle, upon whom the ALJ relied, interpreted her finding about moderate difficulties in concentration, persistence, and pace as consistent with the ability to perform one- to four-step tasks, and that the ALJ was entitled to rely on that statement.  Ealy, says the Commissioner, is distinguishable because the moderate

-7-

limitation in that case was, according to the source who imposed that limitation, an inability to maintain attention and concentration for more than two-hour segments, and that is different from how Dr. Hoyle described Plaintiff's limitation. Finally, the Commissioner notes that the ALJ's residual functional capacity finding is also fully supported by Dr. Spindler's evaluation.

Several things are important to note. First, the ALJ made clear that the step three finding concerning moderate limitations in the area of concentration, persistence, and pace was not a residual functional capacity finding; as the administrative decision states, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment ... The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment ...." (Tr. 16). In that more detailed assessment, the ALJ gave great weight to Mr. Spindler's conclusion that Plaintiff had the mental capacity to perform unskilled labor. She also gave great weight to the state agency reviewers' opinion that Plaintiff could perform one- to four-step tasks. (Tr. 18). The ALJ noted, but did not specifically adopt, the expressed limitation on concentration, persistence, and pace. This Court has held, in accordance with the ALJ's approach, that the RFC determination is different from the step three findings, and that the key question is not whether an ALJ found difficulties in concentration, persistence, and pace at step three, but whether the RFC determination has substantial support in the record. See Dotson v. Comm'r of Social Security, 2014 WL 6909437, *6 (S.D. Ohio Dec. 8, 2014).

Here, however, it really makes no difference whether the ALJ did or did not find, at step four, that Plaintiff had problems in the area of concentration, persistence, and pace. Not all

-8-

concentration or pace-based restrictions are alike. Clearly, Ealy involved a very specific limitation - an inability to maintain concentration for more than two hours at a time. By contrast, as the Commissioner points out, other cases, such as Smith-Johnson, supra, which do not involve that specific limitation, are consistent with the ALJ's approach here. This Court, relying on the Smith-Johnson decision, has held that when the source who identified limitations in concentration, persistence, and pace "did not place functional limitations on Plaintiff's ability to maintain pace when performing simple, repetitive, or routine tasks," it was not necessary for the ALJ to include any pace-based restrictions in the RFC finding. See Haning v. Comm'r of Social Security, 2015 WL 3904996, *12 (S.D. Ohio June 25, 2015). That is a fair description of Dr. Hoyle's opinion. Further, this Court has also recognized that limiting someone to a workplace where only simple changes are made is a concentration-based restriction. Hanson v. Comm'r of Social Security, 2015 WL 1637451, *5 (S.D. Ohio Apr. 13, 2015), adopted and affirmed 2015 WL 2085558 (S.D. Ohio May 5, 2015).

In short, Plaintiff's argument amounts to an assertion that even when the psychologist who identifies a moderate limitation on concentration, persistence, and pace has translated that restriction into a residual functional capacity finding which includes the ability to do simple work in a relatively static workplace, the ALJ is not entitled to rely on that explanation when determining the claimant's mental residual functional capacity. In the Court's view, Ealy does not go that far, and the Court is unwilling to accept that proposition in light of the other authority cited above. For that reason, Plaintiff's sole statement of error lacks merit.

### VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be

entered in favor of the Defendant Commissioner of Social Security.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge